**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CIVIL ACTION NO. 18-105-DLB

ROBERT MOORE                                                                         PLAINTIFF

V.               **MEMORANDUM OPINION AND ORDER**

JOSEPH COUNCIL                                                DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Plaintiff Robert Moore's Motion for Leave to Proceed *in Forma Pauperis*, as well as an attached Complaint. (Docs. # 1 and 1-1). For the reasons that follow, Plaintiff's Motion for Leave to Proceed *in Forma Pauperis* (Doc. # 1) is hereby **granted**, but Plaintiff's Complaint (Doc. # 1-1) is **dismissed without prejudice**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On June 18, 2018, Plaintiff Robert Moore initiated this action in the United States District Court for the Southern District of Ohio against Defendant Joseph Council. (Doc. # 1). In doing so, the Plaintiff filed a Motion for Leave to Proceed *in Forma Pauperis* (Doc. # 1), and tendered a Complaint. (Doc. # 1-1). Thereafter, the Southern District of Ohio transferred this action to the United States District Court for the Eastern District of Kentucky. (Docs. # 2 and 3).

A review of the Plaintiff's Complaint reveals a litany of allegations. The particular claims Plaintiff wishes to bring, however, are difficult to discern given that much of the

1

Complaint is mere gobbledygook. From the erratic factual account, the numerous offers of testamentary proof, and various mentions of constitutional violations, the Court has attempted to make sense of Plaintiff's Complaint and identify the relevant legal issues.

As best the Court can tell, it appears that the Plaintiff, Defendant, and various other parties have found themselves involved in a chaotic and conflict-ridden interpersonal situation. Evidently, the Plaintiff's ex-wife[1]—Alison Moore—is now involved in a romantic relationship with the Defendant. (Doc. # 1-1 at 6, 7). The primary reason for Plaintiff's filing of the instant Complaint appears to be an alleged incident of physical violence that occurred on or about June 2, 2018:

> Joseph Council-defendant named assaulted Plaintiff Robert Moore on June 02, 2018 Intentionally, willingly and maliciously with his hands namely a punch to Plaintiffs [sic] ribs or stomach and thereby causing him injury to his body, namely a lot of pain and suffering and brusing [sic] and hurt [his] body flesh or person.

*Id.* at 3. The Plaintiff further claims that "[a]ll of this was done to plaintiff, by defendant, without any fault of plaintiff while plaintiff was standing in a public street talking to his son." *Id.* In addition to physical pain and suffering, the Plaintiff alleges that the event caused "mental anguish to [his] mind." *Id.* The Complaint alleges that the physical pain from the June 2, 2018 incident lasted "almost a week." *Id.* at 6.

The conflict—and the allegations—continue past June 2, 2018. Specifically, the Plaintiff alleges that approximately two weeks after the June 2, 2018 incident, the Defendant "came to [Plaintiff's] residence in the cover of night and slashed [his] girlfriend Rouzin Saed's tires on her vehicle" and thereby "deprived [Plaintiff] of [his] rights to live

---

[1] Although the Plaintiff refers to Alison Moore as his ex-wife (Doc. # 1-1 at 6), the Plaintiff's Motion for Leave to Proceed *in Forma Pauperis*, indicates that the Plaintiff and Alison Moore are only separated. (Doc. # 1 at 2).

2

free of fear, rights to travel using a vehicle and [his] constitutional rights to not be harmed in [his] body or mind." *Id*. at 3. On this same night, the Plaintiff alleges that the Defendant "broke into [his] car and took around 250 cash and [his] pain medication." *Id*. at 4. Afterwards, the Plaintiff claims that the Defendant's "blood relative" provided a get-away car so that the Defendant could flee the scene. *Id*. at 5.

In addition to these specific incidents, the Plaintiff accuses the Defendant and Alison Moore—his ex-wife and apparently the custodian of his children—of illicit drug use. *Id*. at 6. Plaintiff claims that the Defendant has "manipulate[ed] and influence[d]" Alison Moore to "withhold" Plaintiff's children from him. *Id*. at 4. These actions, the Plaintiff claims, violate his "constitutional rights to own … and possess [his] relationship as a parent over [his] two kids" and constitute "interference" with his "rights to parent [his] children" under the United States Constitution. *Id*. The Plaintiff further claims that the Defendant has interfered with and violated his constitutional rights for eight months.[2] *Id*.

As a result of the aforementioned events, the Plaintiff claims that he is "missing sleep," "scared for [his] life," and "worr[ies] constantly that [the Defendant] will come and shoot [him] dead" because the Plaintiff saw the Defendant "with a knife while he slashed" the "tires of [Plaintiff's] girlfriend's vehicles." *Id*. at 4. The Plaintiff also claims to be aggrieved by the Defendant's and Alison Moore's actions with respect to his children:

> For the last 8 months when I have tried to see my kids, Joey Council has interfered with my relationship with them and greatly influenced their mother to not let me see my own blood children. He has said many times to me that I am not welcome around them. I am not wanted anymore by them. He will raise them as their own dad.

*Id*. at 7. In addition to contesting the Defendant's and Alison Moore's fitness to parent,

---

[2] At another place in the Complaint, Plaintiff alleges that he had not seen his son in five months. (Doc. # 1-1 at 6).

3

the Plaintiff claims to "have texts where Alison and Joey have said to stay away from [his] kids and the kids don't love [him] at all and don't like [him]." *Id.* Finally, the Plaintiff asserts that "Alison Moore and Joey are playing head games and house with [his] children's lives" and alleges that he is his "kids [sic] father" and that the Defendant is "unconstitutionally interfering with [his] children's lives and [his] relationship with them." *Id.* at 7.

The Plaintiff seeks various forms of relief throughout his Complaint. First, Plaintiff asks the Court to "issue a restraining order" against the Defendant, "give [Plaintiff] a new name so" the Defendant cannot "find [Plaintiff] and kill [him]," and for a "jury trial and all else." (Doc. # 1-1 at 5). Later in the Complaint, Plaintiff again demands a jury trial and a "restraining order" against the Defendant preventing him from coming near the Plaintiff and his "minor children," as well as "Rouzin Saed or her kids," who are not parties to this action. *Id.* at 8. Plaintiff also makes various requests regarding "freezing" the Defendant's assets, which appear to be in anticipation of a money judgment in this action:

> Prevent Joey Council Defendant from transferring his real estate thats [sic] titled in his name for avoidance/losing these things or them if Plaintiff wins this suit and he persues [sic] attachment from judgement [sic]. Please issue an order Freezing the transfer or sale of property, houses, cars, 4 wheelers, boats, etc owned by Defendant unless he motions the Court beforehand with just cause, and more specifically the property located [sic] Crestview Lakes Villa mobile home park 1094 Amber drive Florence, KY 41042 that is a double wide mobile home

*Id.* Finally, Plaintiff seeks compensatory damages in the amount of $5,000,000 and punitive damages in the amount of $20,000,000, which he requests that the Court make "not dischargeable in bankruptcy at all." *Id.*

## II. ANALYSIS

### A. Motion for Leave to Proceed *in Forma Pauperis*

Applications to proceed *in forma pauperis* are governed by 28 U.S.C. § 1915. This

4

statute "allows a litigant to commence a civil or criminal action in federal court ... by filing in good faith an affidavit stating, *inter alia*, that he is unable to pay the costs of the lawsuit." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Pauper status should be granted when an applicant's affidavit shows that he cannot pay the costs of the lawsuit and still provide "himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

In support of his Motion, Plaintiff submitted a sworn affidavit detailing his financial situation. (Doc. # 1). Because the Plaintiff is unemployed, claims he is has no cash and no money in a bank account, and lists his sole asset as a vehicle worth approximately $1,000, the Court finds that the Plaintiff cannot pay the costs of the lawsuit and still provide himself and his dependents with the necessities of life, the Plaintiff's Motion for Leave to Proceed *in Forma Pauperis* (Doc. # 1) is **granted**. The tendered Complaint (Doc. # 1-1) shall be made a permanent part of the record herein, and Plaintiff may proceed without payment of costs or fees.

Having granted the Plaintiff's Motion for Leave to Proceed *in Forma Pauperis*, the Court must now undertake the initial screening required by 28 U.S.C. § 1915(e).

### B. Initial Screening under 28 U.S.C. § 1915(e)

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke*, 490 U.S. at 324). To address this concern, Congress included subsection (e),

which requires *sua sponte* dismissal of an action upon certain determinations. 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court must review his Complaint pursuant to 28 U.S.C. § 1915(e). *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999). Under § 1915(e), the court is required to screen *in forma pauperis* complaints and dismiss any complaint, or any portion thereof, if the action is: frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

"'[H]owever inartfully pleaded,' allegations in a *pro se* complaint are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "Although liberal construction requires active interpretation of the filings of a *pro se* litigant … it has limits." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (citing *Franklin*, 765 F.2d at 85). "Liberal construction does not require a court to conjure allegations on a litigant's behalf." *Id.* (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Nor are *pro se* litigants exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain: (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). After conducting the initial screening pursuant

to 28 U.S.C. § 1915(e)(2), the Court finds that Plaintiff's Complaint does not satisfy Federal Rule of Civil Procedure Rule 8 and cannot survive screening under § 1915(e)(2).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Therefore, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Id.* These provisions provide for federal-question jurisdiction and diversity-of-citizenship jurisdiction, respectively. 28 U.S.C. §§ 1331; 1332. "A plaintiff properly invokes § 1331 jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh*, 546 U.S. at 513 (citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946)). A plaintiff invokes § 1332 jurisdiction, on the other hand, when he "presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Id.*

The Plaintiff has the burden of establishing subject-matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Wisecarver v. Moore*, 489 F.3d 747, 749 (6th Cir. 2007). To satisfy this burden, the Plaintiff's Complaint must allege "the facts essential to show jurisdiction." *McNutt*, 298 U.S. at 189; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). If "a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514; *see also Carlock v. Williams*, 182 F.3d 916, at *2 (6th Cir.

1999) (table) (holding that an action that is not supported by subject-matter jurisdiction is frivolous under § 1915(e)(2)(B)(i)). For that reason, dismissal is appropriate in this case. The Plaintiff has failed to adequately plead facts which support the exercise of jurisdiction and therefore Plaintiff's Complaint fails to survive screening under § 1915(e).

On the face of his Complaint, despite the broad allegations therein, the Plaintiff claims that his suit against the Defendant is one for "intentional tort" and claims that the Court has diversity-of-citizenship jurisdiction under § 1332. (Doc. # 1-1 at 1). That Plaintiff says so, however, does not make it so.

Again, for a federal court to have diversity-of-citizenship jurisdiction pursuant to § 1332, there must be complete diversity—which means that each plaintiff must be a citizen of a different state than each defendant—and the amount in controversy must exceed $75,000. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Here, complete diversity is not a problem. Plaintiff is a citizen of Ohio and Defendant is a citizen of Kentucky. The Plaintiff, however, has failed to adequately plead facts upon which the Court could rely to conclude that the amount in controversy exceeds $75,000. Although Plaintiff's Complaint seeks compensatory damages in the amount of $5,000,000 and punitive damages in the amount of $20,000,000 (Doc. # 1-1 at 8), his allegations fail to support such a request and suggest that his claim for damages is merely delusional, rather than a request made in good faith. *Neitzke*, 490 U.S. at 328. The most specific allegations of damages the Plaintiff references are: the physical pain and suffering that resulted from the Defendant's alleged punch, which lasted "almost a week"; the corresponding "mental anguish"; the allegedly stolen $250; and the allegedly stolen medication. *Id.* at 4, 6.

Even construed liberally, Plaintiff's allegations fall far short of the requisite $75,000 amount in controversy. *See McCune v. JPay, Inc.*, No. 2:17-cv-670-CMV-JLG, 2017 WL 3437660, at *3 (S.D. Ohio Aug, 10, 2017) (holding that defective-products action where plaintiff sought $500,000 in damages did not sufficiently plead diversity jurisdiction and did not survive screening under § 1915(e)); see also *Carter v. Night Mgmt. & Gap Prot.*, No. 2:12-cv-780-EAPD-EAS, 2012 WL 4757384, at *3 (S.D. Ohio Sept. 7, 2012) (concluding that the plaintiff failed to sufficiently plead diversity jurisdiction where "her allegations fail[ed] to support her request for millions of dollars"); *Tiger v. Pynkala*, No. 14-cv-1212-JDT, 2014 WL 5502405, at *14 (W.D. Tenn. Oct. 30, 2014) (same). Accordingly, the Plaintiff has failed to satisfy the amount-in-controversy requirement and the allegations in his Complaint are insufficient to support diversity-of-citizenship jurisdiction.

Nor can Plaintiff rely on federal-question jurisdiction. Federal-question jurisdiction is invoked when a plaintiff pleads a claim "arising under" federal law or the United States Constitution. 28 U.S.C. § 1331. Although a review of Plaintiff's Complaint reveals numerous allegations regarding the infringement and violation of his constitutional rights (Doc. # 1-1 at 3-4), the Complaint fails to allege a violation of federal law or the Constitution. To establish a right to relief under 42 U.S.C. § 1983, the plaintiff must plead and prove two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 *6th Cir. 2010). Here, the second element presents an insurmountable hurdle for Plaintiff because the Defendant is not an official acting under

color of state law. Instead, the Defendant is merely a private individual who is now in a relationship with the Plaintiff's ex-wife. Thus, even if the Complaint attempted to invoke federal-question jurisdiction, the Complaint would fail to state a claim upon which relief can be granted, and therefore, would not survive screening under § 1915(e).

Furthermore, there is an additional jurisdictional issue that warrants attention. Plaintiff's Complaint makes much of the Defendant's alleged interference with his child-custody rights and claims that his ex-wife—who is now in a romantic relationship with the Defendant—has withheld Plaintiff's children from him. (Doc. # 1-1 at 3-4, 7). These allegations and Plaintiff's request for a restraining order against the Defendant on behalf of his minor children, who are apparently in the custody of Plaintiff's ex-wife, casts additional doubt on the Court's jurisdiction over this matter.

Even assuming the parties are completely diverse and the amount-in-controversy requirement is satisfied, diversity jurisdiction does not exist for domestic-relations cases involving divorce, alimony, or child-custody matters. *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). Although the domestic-relations exception does not apply to "every case touching and concerning the issuance of a divorce, the award of alimony, or a child-custody decree," the Sixth Circuit has "clarified that the domestic-relations exception deprives federal courts of diversity jurisdiction if the plaintiff seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015). Because Plaintiff's Complaint seems to seek modification or enforcement of a child-custody decree—remedies which are "typically attendant to the dissolution of a marriage"—this action appears to "entail continuing judicial supervision of a volatile family situation, and federal courts are poorly

equipped to handle that task." *Id.* at 797.

Put simply, the Plaintiff's Complaint, which fails to provide adequate grounds for federal-court jurisdiction, must be dismissed pursuant to 28 U.S.C. § 1915(e)(2) because it is frivolous and fails to state a claim upon which relief may be granted. That conclusion, however, has no bearing on whether Plaintiff may appropriately pursue his claims in state court, rather than federal court.

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiff Robert Moore's Motion for Leave to Proceed *in Forma Pauperis* (Doc. # 1) is **GRANTED**, and Plaintiff may proceed without payment of costs or fees;

(2) The tendered Complaint (Doc. # 1-1) shall be made a permanent part of the record herein;

(3) Plaintiff Robert Moore's Complaint (Doc. # 1-1) is **DISMISSED WITHOUT PREJUDICE**;

(4) This action is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A corresponding Judgment will be entered contemporaneously herewith.

This 27th day of June, 2018.



Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\ORDERS\Cov18\18-105 MOO pro se initial screening.docx